# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Patrick Cleary,** | : | No. 3:05cv02246 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **CBRL Group, d/b/a** | : | |
| **Cracker Barrel Restaurant,** | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court is defendant's motion for summary judgment (Doc. 24). Having been fully briefed and argued, this matter is ripe for disposition.

## I. Background

The plaintiff brought this employment discrimination suit against his former employer, CBRL Group d/b/a Cracker Barrel Restaurant on October 31, 2005, after the company terminated his employment as general manager of their Fogelsville, PA restaurant. (See Complaint (Doc. 1)). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000(e) *et seq.*, and raises the same claims under the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951 *et seq.* The plaintiff seeks relief in the form of reinstatement to a position of equal duties and responsibilities, front pay, back pay, compensatory damages, attorney's fees and costs.

Plaintiff began working for Cracker Barrel in 1996. (Defendant's Statement of

Material Facts (hereinafter "Defendant's Statement of Facts")[1] (Doc. 26) at ¶ 11).[2] He transferred to the Fogelsville, PA branch in 2002. (Id. at ¶ 23). Supervisor Jim Donaldson transferred plaintiff to Fogelsville due to his previous success at the Hamburg restaurant, which included a general manager of the year award. (Id. at ¶ 20, 23). Donaldson wanted the plaintiff to assume more responsibility as he progressed along the managerial track. (Id. at ¶ 23). Upon plaintiff's arrival, the Fogelsville restaurant showed improvement, winning the company's highest award for hospitality. (Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Response") (Doc. 35)[3] at 1; 2).

On July 17, 2002, a female employee, Pamela Cichonski, notified management that the plaintiff had made lewd comments and asked her to kiss him. (Pamela Cichonski Deposition, Attached as Exhibit C to Defendant's Statement of Facts (Doc. 26-4) (hereinafter "Cichonski Dep.") at 45; Cichonski Dep. Exs. 1, 2.). Donaldson conducted an investigation. (Cichonski Dep. at 42; Cichonski Dep. Ex. 2.) The plaintiff acknowledged he had an inappropriate conversation with Cichonski.

---

[1] The plaintiff admits to this statement. (See Plaintiff's Counterstatement to Defendant's statement of Undisputed Material Facts (hereinafter "Plaintiff's Counterstatement") (Doc. 35) at 1. We will cite to the statement of material facts only for those statements of fact which are not disputed. If the material fact is disputed, we will disclose that.

[2] The plaintiff did not number the paragraphs in his counterstatement. Therefore, the number at the end of the citation refers to the page number and not the paragraph number.

[3] The plaintiff filed both his Counterstatement and Response as one document.

(Plaintiff's Deposition, Attached as Exhibit A to Defendant's Statement of Facts (Doc. 26-2) (hereinafter "Plaintiff's Deposition") at 130; Plf. Dep. Exs. D, F) The company placed him on final written notice and told that any further inappropriate behavior would result in discipline up to and including termination. (Id. at 121; Plf. Dep. Ex. D). In October 2002 two different female employees alleged that the plaintiff had improperly touched them. (Id. at 141,149). In neither instance did the plaintiff admit culpability (Id. at 144, 146; Plf. Dep. Ex. I, J), nor did the company discipline him after an investigation. (Plf. Dep. at 149; Plf. Dep. Ex. K). In June 2003 Donaldson reprimanded the plaintiff for visiting a bar where employees regularly congregate and allegedly buying one employee a beer and another employee shots of alcohol. (Plf. Dep. at 155, 156; Plf. Dep. Ex. M). Donaldson warned the plaintiff that the company's fraternization policy prohibited such acts. (Plf. Dep. Ex. M). Cracker Barrel's fraternization policy reads, in pertinent part:

> "Cracker Barrel Old Country Store restricts fraternization between employees to avoid either the practice or appearance of favoritism, sexual harassment or conflict of interest. . . Inappropriate familiarity with subordinates is prohibited. Subordinates must not be addressed with familiar terms. . . subordinates must not be subjected to sexually suggestive language or behavior." (Defendant's Statement of Facts at ¶ 4).

The company again did not discipline the plaintiff. ( Plf. Dep. at 171; Plf. Dep. Ex. M).

On March 9, 2004 Donaldson suspended the plaintiff with pay while he investigated a new claim of sexual harassment from another female employee. (Id.

at 172, 173, 180; Plf. Dep. Ex. N). Stacy Gallagher claimed that the plaintiff asked her to remove her clothing and gave her a greeting card signed "WYD" (which she took to mean "who's your daddy") (Stacy Gallagher Deposition, Attached as Exhibit D to Defendant's Statement of Facts (Doc. 26-5) (hereinafter "Gallagher Deposition") at p. 82, lines 5 to 18; Gallagher Dep. Ex. 1). She alleged the plaintiff may have called her at home (Gallagher Dep. Ex. 1) and followed her home, all of which she did not desire. (Gallagher Dep. at 82; Gallagher Dep. Ex. 1). The plaintiff admitted to Donaldson that he sent the greeting card and discussed personal matters with Gallagher. (Plf. Dep. at 199, 203, 204, 208, 210; Plf. Dep. Ex. P; Gallagher Dep. at 65, 66). Donaldson terminated the Plaintiff on March 19, 2004. (Plf. Dep. Ex. Q; Plaintiff's Response at 1).[4] Another male filled the plaintiff's former position. (Complaint at ¶ 15).

Plaintiff claims that his subordinate employees conspired against him because Donaldson sent him to Fogelsville to correct operational problems. (See Plaintiff's Response at 2). The plaintiff also contends that while at Fogelsville the female staff initiated conversations of a sexual nature with him and that he reported these conversations to his supervisor, Jim Donaldson, to no effect. (Id.) He alleges that Gallagher should have been disciplined because she pursued him and called him outside of work hours. (See Id. at 2, 8, 9). Plaintiff argues that the defendant

---

[4]The plaintiff in his complaint and response lists the date of termination as being March 29, 2004. However, Cracker Barrel's records lists the date of termination as March 19, 2004.

discriminated against him because the company disciplined male managers for dating female subordinates but did not similarly punish female managers for the same offense. (See Id. at 10, 16, 17). Additionally, the plaintiff argues that male managers were disciplined for violating the fraternization policy for dating female subordinates but the female subordinates were never disciplined. (See Id.). In September 2004, plaintiff dual filed a complaint with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC) alleging sexual discrimination in his discharge. (Complaint at ¶ 6). In March 2005 the PHRC's investigation found no probable cause to support the inference that he was discharged due to his sex. (Defendant's Statement of Facts at ¶ 58). In September 2005 the PHRC mailed plaintiff a right-to-sue notice. (Complaint at ¶ 7). On October 31, 2005 the plaintiff filed a complaint (Doc.1) against his former employer, CBRL Group d/b/a Cracker Barrel Restaurant. In his complaint the plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000(e) *et seq.*, and raises the same claims under the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951 *et seq. (*Complaint at ¶ 1). The plaintiff seeks relief in the form of reinstatement to a position of equal duties and responsibilities, front pay, back pay, compensatory damages, attorney's fees and costs. (Id. at ¶ 22, 25).

II.     **Jurisdiction**

As this case is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000(e), *et seq.*, we have jurisdiction under 28 U.S.C. § 1331 ("The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws. or treaties of the United States.") We have pendant jurisdiction of plaintiff's claims under the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et seq.*

### III.     Legal Standard

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the

governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## IV.    Discussion

Defendant moves for summary judgment on several grounds. We will address each in turn. As a preliminary matter, we note that we apply the same legal standard to claims brought under the Pennsylvania Human Relations Act as we do to claims brought under federal anti-discrimination laws that address the same subject matter. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (finding that "while the Pennsylvania courts are not bound by their interpretations of parallel provisions of Title VII, the ADA, or ADEA [citations omitted], its courts nevertheless generally interpret the PHRA in accord with its federal counterparts."). Accordingly, our decision on summary judgment on the employment discrimination claim under Title VII will also apply to the same claims made under the PHRA.

**A**. **Sex discrimination in the plaintiff's termination**

I. Legal Standard

7

We must determine whether the plaintiff has presented enough evidence to meet his burden under Title VII of the Civil Rights Act of 1964. Under Title VII, sex discrimination against males has been dubbed "reverse discrimination." In such a case, as defendant correctly points out, a modified burden-shifting analysis that differs slightly from the usual test under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), has been adopted by the Third Circuit. See Iadimarco v. Runyon, 190 f.3d 151 (3d Cir. 1999). The employee must establish a *prima facie* case by presenting sufficient evidence to allow a factfinder to conclude the employer treated the employee less favorably than others based on sex. See Id. at 161. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for firing the employee. See Id. at 157 (quoting McDonnell Douglas, 411 U.S. at 802). If the employer succeeds in meeting this burden, the burden shifts back to the employee to show the employer's reason for firing him is pretextual. See Id. at 157-158 (quoting McDonnell Douglas, 411 U.S. at 804). To meet his burden, the employee must point to evidence from which a reasonable factfinder "could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." See Id. at 166 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). If the employee offers evidence that would allow reasonable factfinder to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary

8

judgment must fail. See Id. (quoting White v. Westinghouse Elec. Co., 862 F.2d 56, 62 (3d Cir. 1989)).  Failure to establish either a prima facie case or pretext is grounds for summary judgment. See Corbett v. Sealy Inc., No. 03-173, 2005 U.S. Dist. WL 612922 (W.D. Pa. March 14, 2006) (granting summary judgment for the employer).

II. Prima Facie Case

The defendant claims that the plaintiff has failed to meet his burden of proof for demonstrating a *prima facie* case.  Defendant agues that the plaintiff cannot demonstrate that male managers were disciplined differently than female managers or female employees who violated the company's fraternization policy, and thus has presented no evidence of adverse treatment on the basis of sex.  The defendant points to the plaintiff's deposition, where he admitted that other male managers violated the fraternization policy without receiving any discipline. (See  Plf. Dep. at 233, 262, 263).  The lone female manager  (Barbra Goboloski) who plaintiff alleges violated the fraternization policy had been investigated and cleared by the company three years prior to plaintiff's termination.  Even if she had violated the policy her position was not analogous to that of the plaintiff.  The Defense points out that when terminated the plaintiff was: 1) on final written notice; 2) had been warned about the fraternization policy; 3) had previously admitted to breaking the policy; and 4) had been previously accused of sexual harassment.  It is the defendant's position that under these circumstances the plaintiff can not make a prima facie case for sexual

9

discrimination.

The plaintiff was a rising star among Cracker Barrel management. He had garnered praise in every restaurant in which he worked and was on track to one day be a district general manager. The plaintiff contends that dating between subordinates and management was common in Fogelsville. He alleges that two managers, including a female manager (Goboloski), met, dated, and wed subordinates while working in Fogelsville. In neither instance did the company take disciplinary action. Plaintiff points to incidents where male managers and female employees dated and only the male managers were disciplined for violating the fraternization policy. Former and current Cracker Barrel employees testified that various employees and managers, male and female, violated the company's fraternization policy. These individuals also support the plaintiff's proposition that the company only disciplined males for violating the policy. Plaintiff's supervisor, Jim Donaldson, stated in his deposition that "[I] don't recall terminating any women for violating the fraternization policy." (Jim Donaldson's Deposition, Attached as Exhibit B to Defendant's Statement of Facts (Doc. 26-3) (hereinafter "Donaldson Deposition")).

Viewing the facts as a whole, we find the evidence provided by the plaintiff is insufficient to create a genuine issue of material fact as to whether the defendant applied its fraternization policy in a sexually discriminatory manner. No reasonable juror could conclude that the plaintiff was terminated due to his sex. The plaintiff's

10

pleadings fail to establish a discriminatory animus. The plaintiff does not point to any like-situated employees or others outside of the protected class who were treated more favorably on the basis of sex. The lone female employee plaintiff accuses of violating the fraternization policy was investigated and cleared by the company some three years prior to the plaintiff's termination. The plaintiff undercuts his argument by claiming that members of the protected class were also not disciplined for violating the fraternization policy. He also states that he was replaced by another man.[5] No reasonable juror could find for the plaintiff when other men in the same position the plaintiff formerly held were not disciplined for the same violations and under the same supervisor.

At best, the plaintiff has demonstrated that the company did not always consistently police and discipline employees for violating company policy, sometimes retaining employees who committed the same offense which others were fired. He does not present any evidence that this inconsistency was grounded in the sex of the employee. The plaintiff argues that the company applied the policy more strictly to male offenders than female offenders. He points to a several male managers who were terminated for violating the company's fraternization policy. The plaintiff fails, however, to describe the context of the other male manager's terminations. The

---

[5]See Pivirotto v. Innovative Sys. Inc., 191 F. 3d 344, 354 (3d Cir. 1999) (suggesting that employer's replacement of person complaining of discrimination with another person within complainant's protected class militates against finding of discrimination).

11

plaintiff has put forth no admissible evidence, such as employee counseling reports or records from Cracker Barrel, that demonstrate why these male employees were fired. See Fed. R. Civ. 56(e) (stating that a non-moving party cannot rely on mere allegations, but instead must set forth specific facts showing a genuine issue for trial); Ballo v. Adecco, No. 05-5734, 2006 U.S. Dist. WL 1876569 (E.D. Pa. July 5, 2006). (summary judgement granted for defendant when plaintiff provided "merely unsupported assertions" rather than evidence of discrimination.). We therefore find that the plaintiff has failed to meet his *prima facie* burden in this case.

III. Legitimate Non-Discriminatory Reason

For the sake of completeness, we will address the rest of the burden shifting analysis in this case. The defendant terminated the plaintiff for violating the company's fraternization policy. To meet the burden of presenting legitimate, non-discriminatory reasons for the employment decision Cracker Barrel needs only to introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes 32 F.3d at 763. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original). From 2002 through 2004, the plaintiff faced four accusations of sexual harassment from four different female employees, as well as a complaint for violating the company's fraternization policy. After the first accusation of sexual

12

harassment, the company placed the plaintiff on final written notice. Subsequently, a third female employee accused the plaintiff of sexual harassment. The plaintiff again violated the fraternization policy when he visited a restaurant where employees were known to congregate. In each instance the company took no disciplinary action, though it could have terminated the plaintiff.

Following these incidents, a fourth female (Stacy Gallagher) complained to management that the plaintiff had made lewd comments and gave her a greeting card with an inappropriate comment. Donaldson suspended the plaintiff while investigating the allegation. During the investigation, the plaintiff admitted to Donaldson that he had fraternized with Gallagher. Donaldson terminated him. We find that under the facts and circumstances of the case that the reasons proffered by the defendant represent a legitimate non-discriminatory reason for the plaintiff's termination. See Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 863-864 (3d Cir. 1986) (determining that an employee's record of insubordination, poor performance, and misconduct were legitimate nondiscriminatory reasons for her discharge).

IV. Pretext

Since the defendants have met their burden by providing a legitimate non-discriminatory reason for terminating the plaintiff, the burden shifts to the plaintiff to demonstrate that the employer's reason for firing him was pretextual. See Indamarco, at 157 (quoting McDonnell Douglas 411 U.S. at 804). The employee

13

must point to evidence from which a reasonable factfinder "could either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." See Id. at 166 (quoting Fuentes, 32 F.3d at 765).  The plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or  contradictions in the employer's proffered legitimate reasons, [such] that a reasonable factfinder could rationally find them to be 'unworthy of credence'" and conclude that the proffered nondiscriminatory reason "did not actually motivate" the employer's action.  Simpson v. Kay Jewelers, 142 F.3d 639, at 644 (3d Cir. 1998) (citing Fuentes 32 F.3d at 764-765 (quoting Ezold v. Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 531(3d Cir. 1993)).  The plaintiff can meet his burden by demonstrating that "the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class".  Id. at 645 (citing Fuentes 32 F.3d at 765).

    The plaintiff argues that female subordinates conspired against him as their manager.  He asserts that the complaints of sexual harassment filed against him during his employment were fabricated, and that the female employees who complained of sexual harassment sought his ouster and used charges to achieve it. He points out that employees at the Fogelsville restaurant had a reputation for being

difficult to manage and had a history of hostility towards management. In other words, the plaintiff contends that the defendant improperly credited the allegations of plaintiff's subordinates in deciding to fire him. He does not present any evidence, however, to demonstrate the defendant knew that these allegations were false. Instead, plaintiff's complaint appears to be with the defendant' decision to terminate him based on such allegations. Here, the issue is not the wisdom or competency of the defendant's decision to fire plaintiff. Instead, the issue is whether a discriminatory animus motivated Cracker Barrel or Donaldson. See Fuentes, 32 F.3d at 765 (citing Ezold, 983 F.2d at 531, 533) (stating that "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). The Plaintiff has presented no evidence by which a reasonable decision-maker could discredit the defendant's stated reason for terminating the plaintiff. Plaintiff has therefore failed to meet his burden for this part of the McDonnell-Douglas test.

The plaintiff also contends that a female manager dated a male employee while at work and received no discipline. At the same time, however, the plaintiff points to other male managers who received no discipline for similar acts. The plaintiff also points to other instances where male managers fraternized with female employees and were disciplined, while the women did not face adverse action. This

15

evidence consists merely of conjecture, hearsay and rumor.  The former and current Cracker Barrel employees, as well as the plaintiff, appear to lack first-hand knowledge about the alleged dating among the Cracker Barrel community.  Evidence introduced to defeat a motion for summary judgment must be "capable of being admissible at trial."  Callahan v. A.E.V., Inc, 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993).   Under the current showing, much of this witness testimony would be inadmissible for want of personal knowledge.  See Fed. R. Evid. 602.

Finally, the fact that a female manager may have dated a male employee and was not disciplined is not necessarily proof of discrimination.  See Simpson 142 F.3d at 649. (holding that the mere favorable treatment of one younger manager as compared to one older manager may not be sufficient to infer age discrimination). Under the facts of the case, the alleged dating between Goboloski and a male subordinate occurred nearly three years before the plaintiff was terminated.  The company investigated the claim against Goboloski and elected not to take any action.  Similarly, three of the five complaints involving the fraternization policy against the plaintiff resulted in the company not taking any disciplinary action.  The plaintiff's supervisor, Jim Donaldson, was not the decisionmaker or investigator of the claim against Goboloski.  The claims predated his tenure as general manager. The plaintiff also fails to present evidence that Goboloski had incurred previous discipline from the company for violating the fraternization policy and thus could be

16

considered a similarly-situated individual.[6]  Based on the evidence, no reasonable factfinder could conclude that Goboloski and the plaintiff are like-situated individuals.

The plaintiff also pointed to other alleged violations of the fraternization policy in which male managers were not disciplined.  This pattern does not show discrimination;  it displays a uneven distribution of discipline by the company against both male and female managers for violating the fraternization policy.  We do not have the authority to find discrimination because of such an inconsistent administration, when it has not been shown by the plaintiff to what extent or why the others were disciplined.  Further, there is no evidence that Golebiewski had any prior discipline for violating the fraternization policy, nor was there evidence that she had sexually harassed male subordinates.  In determining whether similarly situated female employees were treated more favorably, our "focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action."  Pivirotto v. Innovative Sys., 191 F.3d 344, 359 (3d Cir. 1999) (quoting Simpson 142 F.3d at 647).  The company stated that it terminated the plaintiff for

---

[6] See e.g., Miller v. Del., 158 F. Supp. 2d 406, 411 (D. Del. 2001) ("In order for an employee to be considered similarly situated, for the purpose of showing disparate treatment in Title VII cases, the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the . . . employees whom he alleges were treated more favorably." (citations and quotations omitted));  McCann v. City of Philadelphia, 2004 U.S. Dist. WL 2040410, *1 (E.D. Pa. Sept. 13, 2004) (quoting Anderson v. Haverford College, 868 F.Supp 741, 745 (E.D. Pa. 1994) (citations omitted) ("Under Title VII, to be deemed similarly situated the individuals with whom a plaintiff seeks to be compared must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

17

violating the fraternization policy. The record demonstrates the plaintiff did so several times. The plaintiff has failed to demonstrate that Golebiewski violated the policy, or even assuming that she did violate the policy, that the company did not discipline her because of her sex.

We therefore conclude that even if we were to accept that the plaintiff has made a *prima facie* showing of sex discrimination, the plaintiff cannot rebut the defendant's legitimate nondiscriminatory reason for terminating the plaintiff. The plaintiff did not meet his burden by showing that the company's decision was pretextual. The plaintiff cannot point to evidence that would cause a reasonable factfinder to either disbelieve that the company terminated the plaintiff for violating the fraternization policy or find that an invidious reason more likely than not motivated the company's decision to terminate the plaintiff. Accordingly we will grant defendant's motion for summary judgment.[7]

---

[7]The defendant postulates that because of the plaintiff's failure properly to respond to or deny any of the defendant's material facts, the defendant's material facts should be deemed admitted. Relying on unreported cases from the third circuit, the defendant argues that absent specific denials, failing to cite to the record and offering mere argument instead of substance the defendant's statements of facts should be deemed admitted. See Lokuta v. Sec. Ins. Of Hartford, No. 05cv855, 2006 U.S. Dist. WL 1000023 (M.D. PA April 17, 2006); Grossman v. Jimenez, No.03cv910423, 1992 U.S. Dist. Lexis 22766 (M.D. Pa April 17, 1992). The plaintiff did file a response to the defendant's statement of material facts. The plaintiff agreed that a portion of the defendant's facts are not in dispute. However, the plaintiff disagreed with some facts presented by the defendant. Plaintiff argued that these facts were contestable and went to the ultimate conclusion. Specifically, the plaintiff contested the credibility of Stacey Gallagher's testimony. The plaintiff did not cite to the record in his response to the defendant's statements of the facts. Statements of material fact in support or opposition to a motion for summary judgment must include references to the record. See M.D. Pa. LR 56.1 (2006). Though the plaintiff failed to cite to the record, or properly articulate a denial of the defendant's statements of material fact,

18

---

the court finds that the defendant was not prejudiced by these technical failures.  In any event, we have determined to grant the defendant's motion and this motion is immaterial.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Patrick Cleary,** | : | **No.3:05cv02246** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CBRL Group, d/b/a** | : | |
| **Cracker Barrel Restaurant,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 31st day of July 2007, The Defendant CBRL Group, d/b/a Cracker Barrel Restaurant's motion for Summary Judgment (Doc. 24 ) is hereby **GRANTED**.  The Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**

 s/ James M. Munley
 **JUDGE JAMES M. MUNLEY
 United States District Court**